**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

Rochelle L. Sachsenmaier,

                Plaintiff,

v.

SUPERVALU, Inc.,

                Defendant.

Civil No. 10-4868 (SRN/AJB)

**MEMORANDUM OPINION
AND ORDER**

---

Andrew J. Hippert, William J. Marshall, Midwest Disability, PLLP, Coon Rapids, Minnesota, for Plaintiff.

Randi J. Winter, Richard R. Voelbel, Ruth S. Marcott, Felhaber Larson Fenlon & Vogt, PA, Minneapolis, Minnesota, for Defendant.

---

SUSAN RICHARD NELSON, United States District Judge

     Plaintiff Rochelle Sachsenmaier previously was employed by Defendant SUPERVALU, Inc. ("Supervalu"). In 2009, she applied for benefits under the company's short-term disability plan due to chronic diarrhea, but her application was denied. She then commenced this action, alleging that Supervalu had violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. The parties now cross-move for summary judgment. For the reasons that follow, Supervalu's Motion will be granted and Sachsenmaier's Motion will be denied.

## I. BACKGROUND

### A. The Plan

Sachsenmaier was employed as an Asset Protection Agent for Cub grocery stores, a unit of Supervalu, until December 2008. She was covered by Supervalu's Short-Term Disability Program for Non-Union, Non-Exempt Employees ("the Plan"). CIGNA served as the Plan's Claims Administrator and named Fiduciary for Short-Term Disability Claims Purposes. (AR at 758.)[1] The Plan gives Supervalu and CIGNA discretion to interpret its terms and make eligibility determinations. (Id. at 753, 755.)

The Plan provides that a covered employee "is considered Disabled if, solely because of a covered Injury or Sickness, he or she is unable to perform all the material duties of his or her Regular Occupation and is unable to earn at least 80% of current Covered Earnings." (Id. at 748.) The Plan further provides that the covered employee "must provide [the Plan], at his or her own expense, satisfactory proof of Disability before benefits will be paid." (Id. at 750.) The Plan does not define what amounts to "satisfactory proof." (Id.)

### B. Sachsenmaier's Illness

Sachsenmaier has a history of chronic diarrhea, for which she visited several doctors between 2002 and 2008. On September 4, 2003, she was examined by Dr. Peter Schill. (Id. at 148.) During that examination, she complained of a several-month history of diarrhea with constipation. (Id.) Dr. Schill opined that she might be suffering from

---

[1] The Court will use "AR" when citing the administrative record, to which both parties have agreed.

irritable bowel syndrome, but could not rule out celiac sprue.[2]  (Id.)  He did not offer an opinion as to Sachsenmaier's fitness to work.  (Id.)

Sachsenmaier's symptoms continued, and she saw Dr. Christina Pieper-Bigelow on October 5, 2005.  (Id. at 698.)  Dr. Pieper-Bigelow noted that previous labs came back normal and scheduled her for a colonoscopy.  (Id.)  Biopsies from the colonoscopy were normal.  (Id. at 697.)  Sachsenmaier then saw Dr. William Spinnelli on December 12, 2005.  (Id. at 673.)  Following a discussion of her symptoms and the effect her illness had on her work, Dr. Spinelli provided her with a note stating that her symptoms were "medically indicated, and more importantly under investigation."  (Id.)

Sachsenmaier saw several different doctors over the next few months (e.g., id. at 123, 128, 672), leading to her consultation with Dr. Ronald Soltis, a member of the University of Minnesota's gastroenterology division.  (Id. at 538.)  Dr. Soltis opined that her diarrhea might be attributable to "bacterial overgrowth or small bowel mucosal disease."  (Id.)  Sachsenmaier then saw Dr. Garrick Olsen on October 25, 2006, who evaluated her progress and "wrote a prescription for her job that shows that she is actually getting better and . . . can likely return . . . to work once she is through with this bacterial overgrowth syndrome."[3]  (Id. at 119.)

---

[2] Celiac sprue, or celiac disease, is "a malabsorption syndrome, thought to be hereditary, precipitated by ingestion of gluten-containing foods.  It is characterized by diarrhea and steatorrhea; abdominal distention; . . . and electrolyte depletion." Dorland's Illustrated Medical Dictionary 537 (31st ed. 2007).

[3] Although Dr. Olsen and Dr. Soltis opined as to the possibility of "bacterial overgrowth syndrome," no subsequent medical records mention such a syndrome.

3

On December 19, 2006, Sachsenmaier gave Supervalu a note from Dr. Christopher Shepela, another gastroenterologist at the University of Minnesota, who recommended that "it would be beneficial for [her] to work at locations nearest to her home" for the next six months. (Id. at 80.) Dr. Shepela wrote similar recommendations for Sachsenmaier on April 13 and August 29, 2007. (Id. at 78-79.)

After receiving these opinions, Supervalu worked to accommodate Sachsenmaier's condition. It made arrangements for her to work thirty-two hours a week at the Hastings Cub store, the only store within five miles of her home, and agreed that she could "float" the remaining eight hours at another store, or use vacation, personal, or sick time to reach a full forty-hour week. (Id. at 737.) This arrangement continued until Sachsenmaier's separation from Supervalu. On June 19, 2008, Dr. Shepela opined that Sachsenmaier's condition was improving. (Id. at 83-84.) Dr. Richard Andrews examined her on November 13, 2008, and two days later he wrote a letter recommending that Supervalu's 5-mile accommodation continue. (Id. at 635.)

On December 1, 2008, Sachsenmaier did not go to work because of her condition, and took a personal day. (Id. at 71.) She used another personal day on December 2, and was not scheduled to work on December 3 or December 4. (Id.) Before she could call off her shift on December 5, Supervalu faxed a letter informing her not to report to work, but that she would be paid for the day. (Id.) She was not scheduled to work on December 6, and her employment was terminated on December 7.[4] (Id. at 288, 301.)

---

[4] The parties dispute the date of termination and the date of disability onset. For purposes of the present Motions, the Court assumes that Sachsenmaier's dates are correct.

4

### C. Sachsenmaier's Short-Term Disability Claim

Sachsenmaier telephonically submitted a claim for short-term disability benefits to CIGNA on April 13, 2009—that is, four months after her employment ended. (Id. at 293.) She indicated that her disability began on December 7, 2008, and she described it as "[s]evere [gastrointestinal] trouble, bowel problems [and] pain in the stomach." (Id. at 295.) She also asserted that her disability was work-related, originating with a June 24, 2004 incident. (Id.)

CIGNA received an April 23, 2009 email from Supervalu providing that Sachsenmaier's employment had ended on December 6, 2008, which rendered her ineligible for benefits on December 7. (Id. at 288.) Accordingly, it sent her a denial letter on April 24, and also informed her that she could appeal this determination. (Id. at 7.)

Sachsenmaier appealed on September 9, 2009. (Id. at 20.) She asserted that despite the first reported date of disability being December 7, 2008, she "was having difficulty with her disabling condition well before December 6, 2008 and it was the reason she was forced to leave her job with Supervalu (Cub Foods)." (Id. at 70.) She also asserted that she was not actually terminated until December 7, 2008. (Id. at 71.) She supported her appeal with a May 20, 2009 letter from Dr. Shepela, who detailed her medical history and explained that he could offer "no further medical options . . . for her symptoms, barring any new options that arise in this field." (Id. at 75.)

CIGNA reviewed the appeal with a medical consultant "to ensure that the medical evidence was interpreted appropriately" and to assess her "functional ability, and whether

5

[she] satisf[ied] the definition of disability as defined under [the] policy." (Id. at 22, 33.) It also requested further documentation from Sachsenmaier to support her claim. (Id. at 22, 24, 37.) It specifically asked her to "carefully review the . . . original denial letter . . . to ensure that any and all available medical or other documentation related to [her] claim ha[d] been submitted." (Id. at 37.) On December 21, 2009, CIGNA upheld its denial:

> Following the review of Ms. Sachsenmaier's entire file, the assessment was that there was no medical information on file from 12/7/08 to 5/13/09. The plan required her to follow the definition of disability. Since no medical information was received for this time period, we are unable to verify if she was disabled beginning 12/7/08. Another reason she would not be receiving benefits would be she filed a claim for disabiility on 12/7/08 and her employer terminated her on 12/6/08. Therefore, we are reaffirming our previous decision to deny her claim.

(Id. at 34.) The denial also informed Sachsenmaier that she could request a further review in writing and that such a request "must include new documentation," including but not limited to "[o]ffice notes and test results from December 7, 2008, to the present." (Id.)

Sachsenmaier requested review of CIGNA's December 21, 2009 decision on May 26, 2010. (Id. at 300.) Her request included additional medical records from 2004 to November 2008, a job description, and medical records from April 20, 2009, to November 16, 2009, but failed to provide any records detailing her medical condition as of December 7, 2008. (Id. at 35.) CIGNA agreed to review its denial of benefits a second time. (Id. at 37.) It informed Sachsenmaier that this voluntary level of appeal required new relevant medical documentation to refute its previous decisions, and that none of the information provided was relevant for the time period beginning on

6

December 7, 2008.  (Id. at 35.)  It also had a medical consultant review her medical documentation again.  (Id.)

CIGNA upheld its prior decisions on November 17, 2010.  (Id. at 45.)  In reviewing the medical evidence, it noted:

> The work-ups have been negative for celiac spruce [sic].  The inflammatory bowel panel was negative, a colonoscopy was negative, exploratory laparotomy was negative, upper GI negative and CT scan was negative.  The clinical findings did not document weight loss, dehydration or loss of skin integrity due to frequent diarrhea.  The physical exam findings did not provide any restrictions or limitations to have her stop working as of 12/7/08.

(Id.)  After a comprehensive review, it concluded that no medical information on file supported her sudden inability to function as of December 6, 2008, and upheld the denial of benefits.  (Id. at 46)

Sachsenmaier filed the instant action in the Dakota County, Minnesota District Court on November 30, 2010, and Supervalu removed it to this Court on December 13, 2010.  She alleges that Supervalu abused its discretion by discounting substantial medical evidence when reviewing her disability claim, and therefore wrongfully denied her benefits.  The parties have cross-moved for summary judgment.  The issues have been fully briefed, and they are now ripe for disposition.

## II.   DISCUSSION

### A.  Standard of Review

#### 1.  Summary Judgment

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that the material facts in the case are undisputed.  Id. at 322; Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009).  The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party.  Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

Where, as here, the Court confronts cross-motions for summary judgment, this approach is only slightly modified.  When considering Sachsenmaier's Motion, the Court views the record in the light most favorable to Supervalu, and when considering Supervalu's Motion, the Court views the record in the light most favorable to Sachsenmaier.  "Either way, summary judgment is proper if the record demonstrates that there is no genuine issue as to any material fact."  Seaworth v. Messerli, Civ. No. 09-3437, 2010 WL 3613821, at *3 (D. Minn. Sept. 7, 2010), aff'd, 414 F. App'x 882 (8th Cir. 2011).

### 2. ERISA

An ERISA plan participant has the right to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights

to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). When a plan reserves discretionary authority to construe uncertain terms or to make eligibility determinations, courts review these determinations only for abuse of discretion. King v. Hartford Life & Accident Ins. Co., 414 F.3d 994, 998-99 (8th Cir. 2005) (en banc) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989)). Under an abuse-of-discretion standard, the Court will affirm the administrator's interpretation of the plan unless it was arbitrary and capricious. Midgett v. Wash. Group Int'l Long Term Disability Plan, 561 F.3d 887, 896-97 (8th Cir. 2009). A less deferential standard of review applies, however, if a claimant presents evidence demonstrating (1) the administrator committed a serious procedural irregularity other than a conflict of interest (2) causing a serious breach of its duty to the claimant. Metro. Life. Ins. Co. v. Glenn, 554 U.S. 105, 115 (2008); Manning v. Am. Republic Ins. Co., 604 F.3d 1030, 1038 (8th Cir. 2010); Pralutsky v. Metro. Life. Ins. Co., 435 F.3d 833, 837 (8th Cir. 2006).

Here, the Plan provides CIGNA with the "authority, in its discretion, to interpret the terms of the [Plan], to decide questions of eligibility for coverage or benefits under the [Plan], and to make any related findings of fact." (AR at 753, 755.) Sachsenmaier argues that the complex nature of her condition required CIGNA either to contact her physicians directly or to have a medical doctor or gastroenterologist review her claim, and that the failure to do so is a procedural irregularity that requires imposing the less deferential standard of review.

Although insurance companies are not always required to obtain independent medical examinations or send claimants to be examined by specialists, such measures

9

might be necessary when a claimant presents medical evidence of an uncommon disease. In Heaser v. The Toro Co., for example, the court found that the administrator's decision not to send a fibromyalgia claimant to a specialist for evaluation was not a procedural irregularity because the plaintiff's physician directly informed the administrator that he no longer considered the plaintiff disabled, and an in-house consultant who specialized in pulmonary medicine reviewed the plaintiff's records.  247 F.3d 826, 833-34 (8th Cir. 2001).  By contrast, in Payzant v. UNUM Life Insurance Co. of America, this Court found that it was a procedural irregularity not to obtain an independent medical evaluation, and instead to rely on an in-house review of the claimant's medical diagnosis that disagreed with the medical opinions of claimant's primary physicians. 402 F. Supp. 2d 1053, 1062 (D. Minn. 2008).

      Unlike Payzant, however, none of Sachsenmaier's doctors requested a functional evaluation to determine the extent of her disability.  Unlike both Heaser and Payzant, no medical evidence in the record supports Sachsenmaier's disability claim.  Sachsenmaier herself presented no medical evidence that her condition prevented her from performing her job.  See Cambron v. Usable Life Ins. Co., No. 04-233, 2007 WL 1411626, at *6-7 (E.D. Ark. May 10, 2007).  In fact, one of her treating physicians opined that she could continue working with accommodation just weeks before her employment was terminated.  And unlike both Heaser and Payzant, Sachsenmaier's claimed disability is not an uncommon disease.  Diarrhea is a symptom rather than a disease, and even if it were a disease, it cannot be reasonably described as an uncommon one.  CIGNA's decision not to have a medical doctor or a gastroenterologist evaluate Sachsenmaier's

10

claim was not a procedural irregularity where no doctors established the need for such a review.  Accordingly the Court will review CIGNA's denial of her claim under an abuse of discretion standard.

### B.  CIGNA's Denial of Sachsenmaier's Claim

Supervalu argues that its decision to deny Sachsenmaier's claim was not an abuse of discretion because she did not provide objective medical evidence that she was unable to work with an accommodation.  Sachsenmaier counters that the Plan did not require objective evidence as a prerequisite to obtaining benefits, and that requiring her to provide objective evidence of her disability was an abuse of discretion.

Generally, where a disability plan grants an administrator discretion to determine a participant's eligibility, "[i]t is not unreasonable for a plan administrator to deny benefits based upon a lack of objective evidence."  McGee v. Reliance Std. Life Ins. Co., 360 F.3d 921, 925 (8th Cir. 2004).  In some circumstances, however, it is unreasonable to *insist* on objective medical evidence.  In House v. Paul Revere Life Insurance Co., the Eighth Circuit concluded it was an abuse of discretion for an administrator to insist on objective medical evidence where the plan documents provided that it "*may* require medical exams or written proof of financial loss," and stipulated that if a medical exam was required, the administrator would pay for it.  241 F.3d 1045, 1048 (8th Cir. 2001) (emphasis added).

Here, the Plan provides that a claimant must submit "satisfactory proof of Disability before benefits will be paid."  (AR at 750.)  The Plan does not explain what evidence CIGNA will consider satisfactory to establish a disability in any given

11

circumstance. When a benefits plan leaves the administrator the discretion to interpret the degree of proof required to establish a purported disability, however, it is not unreasonable for the administrator to require objective medical evidence of the claimed disability, as long as (1) it provides an adequate explanation of the information sought and (2) the evidence requested is not impossible to produce. See Pralutsky, 435 F.3d at 839 (citing Brigham v. Sun Life of Can., 317 F.3d 72, 84 (1st Cir. 2003) (recognizing that objective medical evidence "will not always be necessary, as certain disabling conditions [like chronic fatigue syndrome] are not susceptible to such objective evaluations")).

In the instant case, CIGNA provided an adequate explanation of the information it sought, and the requested information would not have been impossible for Sachsenmaier to produce. In a letter acknowledging receipt of her second appeal, CIGNA requested that she provide "relevant medical documentation to refute [its] previous determination" pertaining to the time period beginning December 7, 2008. (AR at 35.) As detailed above, Sachsenmaier did not provide any information that established her disability as of December 2008. CIGNA requested the same information on several occasions. Sachsenmaier does not argue that CIGNA requested documentation of a condition that cannot be objectively analyzed, nor that the requests did not provide an adequate explanation of the information sought. Therefore, the Court determines that CIGNA's request for objective medical evidence supporting her claim was reasonable.

Despite CIGNA's repeated requests for relevant medical evidence of her disability, Sachsenmaier failed to provide any. In response to CIGNA's requests, she provided medical documentation from 2004 to 2008, and doctors' notes from May 20,

2009 forward indicating that she suffered from chronic diarrhea. These records fail to provide any indication that she became unable to perform any of her job functions as of December 7, 2008.

The record does not support the conclusion that CIGNA acted unreasonably when it denied Sachsenmaier's application for short-term disability benefits. A gap in medical information exists between November 20, 2008—when Dr. Andrews opined that Sachsenmaier could work with accommodation—and May 20, 2009—when Dr. Shepela opined that she was disabled. This is not, as Sachsenmaier argues, objective evidence that she was disabled when her employment was terminated in December 2008. Throughout the process, CIGNA gave her ample opportunity to supplement the record with medical records that would support her claimed sudden inability to work in early December 2008. Sachsenmaier failed to do so.

Sachsenmaier argues that she satisfied these requests because CIGNA had objective medical evidence that established her disability. Specifically, she asserts that the November 2008 letter from Dr. Andrews and the May 2009 letter from Dr. Shepela provide objective evidence that she was disabled. This argument fails. Neither letter explains a change in her condition that would have caused her to be suddenly unable to work as of December 7, 2008. In fact, Dr. Andrews opined that Sachsenmaier could work with accommodation in his November 20, 2008 letter, and Dr. Shepela's letter described her condition as of May 2009. The record is devoid of any medical evidence that Sachsenmaier was disabled when her employment was terminated. Therefore, the Court concludes that CIGNA did not abuse its discretion in determining that

Sachsenmaier did not qualify for short-term disability benefits under the Plan.[5]

### III. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that:

1. Plaintiff Rochelle Sachsenmaier's Motion for Summary Judgment (Doc. No. 14) is **DENIED**;

2. Defendant SUPERVALU, Inc.'s Motion for Summary Judgment (Doc. No. 11) is **GRANTED**; and

3. Plaintiff Rochelle Sachsenmaier's Complaint (Doc. No. 1, Attach. 1) is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: April 17, 2012      s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge

---

[5] Supervalu argues in its brief that, to the extent Sachsenmaier is asserting a claim for wrongful denial of long-term disability benefits, such a claim should be denied as a matter of law for failing to exhaust administrative remedies. (Def. Mem. in Supp. at 18.) Sachsenmaier has made no claim for long-term benefits in the present case (Pl. Mem. in Opp. at 11-14), and accordingly any issue arising from such a claim need not be addressed by this Court.